J-S44003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: T.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: T.S., MOTHER | No. 2665 EDA 2016 |

Appeal from the Order Entered July 26, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001713-2015

| IN THE INTEREST OF: T.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: T.S., MOTHER | No. 2669 EDA 2016 |

Appeal from the Order Entered July 26, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001714-2015

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                     **FILED AUGUST 29, 2017**

Appellant, T.S. ("Mother"), appeals from the July 26, 2016 permanency order, entered by the Court of Common Pleas of Philadelphia County, that continued the dependency and foster care placement of Mother's two minor children, T.M. ("Child 1") and T.M. ("Child 2") (collectively, "the Children"). On appeal, Mother claims that certain provisions of that order violated her constitutional rights. After careful review, we conclude that Mother's issues are waived and, therefore, we affirm.

The court summarized the facts and procedural history of this case, as follows:

On June 24, 2015, a dependency petition was filed as to … [the] []Children[] alleging that the Children had been sexually abused in Mother's home.  Following a hearing on August 31, 2015, the court adjudicated the Children dependent.  The Children were with Mother but the court order provided that they be removed imminently.  The Children were not removed, so the Philadelphia Department of Human Services ("DHS") obtained an Order for Protective Custody.  At a September 3, 2015[] hearing[,] the Children were fully committed to DHS's care, removed from Mother and placed in foster care.  Mother attended regularly-scheduled permanency review hearings every three months, but has not completed objectives set for her by DHS.

At a July 26, 2016[] permanency hearing, the DHS specialist ("Specialist") testified that the Children had been in care for eleven months.  Specialist had called Mother by telephone to review Mother's compliance with her objectives.  Mother was not completing any of her objectives.  Mother told Specialist that she wanted someone else named "Tina" to join in on the call. Specialist told Mother that if Mother did not complete her objectives, Mother could lose her Children forever.  Mother told Specialist that she would not complete her objectives or comply with court orders.  Specialist testified that Mother was recording the call, and had done so before.  Specialist testified that Mother had vowed to record all calls and court proceedings.  [At the start of the July 26, 2016 hearing,] [t]he court had instructed all parties to turn off their cell phones.  The court questioned Mother as to whether her phone was off, and Mother told the court that it was.  A sheriff looking over Mother's shoulder told the court that the phone was on.  The court asked Mother if she was recording the hearing secretly.  Mother would not answer. The court ordered Mother to erase the recording, then surrender her phone to the sheriff for the duration of the hearing. Specialist then informed the court that Mother had a second phone in her bag.  This phone was also on.  The sheriff took the bag and both phones.  Mother told the court she was not recording, but apologized for recording the hearing.  Specialist testified that during a meeting[,] Mother had suggestively asked what Specialist would do if she found her [own] children dead. Mother posted Specialist's work email and address to the websites and Facebook pages of the African National Women's Organization ("ANWO") encouraging people to bombard Specialist with emails demanding that Specialist give the Children back to Mother.  Mother also threatened to release

Specialist's home address online. This posting by Mother resulted in Specialist['s] receiving seventy-five to eighty emails using similar language, holding Specialist personally responsible for separating the Children from Mother. Specialist now feared for her own safety. Mother uses the alias "Bonny Clyde" to post on ANWO-related pages. The Community Umbrella Agency ("CUA") case manager testified that Mother had threatened her family, and [she] feared for her personal safety. Mother refused to sign consents for the Children to engage in therapy, even though therapy was in their best interests. Mother refuses all services and frequently states that she will not complete her objectives. In order to enroll the Children in school, Mother was ordered to write a letter explaining that she did not wish them to be vaccinated. Mother produced a letter, but it was from 2014 and would not suffice to enroll the Children in school. The court ordered that Mother stay away from Specialist, and that Mother not harass or threaten DHS or CUA employees in person or online. The court ordered that when Mother arrives for supervised visitation at the agency, Mother is to surrender all phones and recording devices for the duration of the visit. Security at the agency was authorized to search Mother's bag and hold phones and recording devices if found. The court further ordered that Mother was not to discuss the case with persons other than her attorney and assigned DHS or CUA employees online. Mother was also ordered not to use any aliases to circumvent these orders. Specialist had to be escorted from the hearing by a sheriff, because Mother had brought a number of people from ANWO, who were waiting outside the courtroom, to harass Specialist. On August 23, 2016, Mother acting *pro se* … filed this appeal.

Juvenile Court Opinion, 10/11/16, at 1-3 (citations to the record omitted).

Attached to Mother's *pro se* notice of appeal was a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Her attorney, who petitioned to withdraw but was denied that request, also filed a supplemental Rule 1925(b) statement on September 1, 2016. The court issued its Rule 1925(a) opinion on October 11, 2016. Herein, Mother (now

represented by new counsel) raises the following three claims for our review:

> 1. Did the court below err in entering an overly broad "Gag order[,"] in violation of the rights protected by the Constitutions of the United States and of the Commonwealth of Pennsylvania?
>
> 2. Did the court below err in entering an order authorizing agency "security" to search and seize Appellant's bag and personal possessions, in violation of rights protected by the Constitutions of the United States and of the Commonwealth of Pennsylvania?
>
> 3. Did the court below err in denying Due Process and Equal Protection of Law to [Mother], as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?

Mother's Brief at 4.

After carefully reviewing the record in this case, we conclude that Mother has failed to preserve any of her three claims for our review. For instance, in her first issue, Mother challenges the following portion of the court's July 26, 2016 order:

> Mother is to refrain from threatening any of the social workers[.] Mother is not to talk about this case to anyone[.] Mother is not to place any pictures of social workers, judges, [attorneys], any [court] personnel[] on Facebook, or social media[.] Mother is not to use any other names[.]

Juvenile Court Order, 7/26/16, at 2 (unnecessary capitalization omitted).

Mother avers that the court's order constitutes an "overbroad restriction" on her right to free speech under the First Amendment of the United States Constitution. Mother's Brief at 16. She also complains that the court made "no attempt to draft the 'gag order' as narrowly as needed." *Id.*

- 4 -

The record confirms that Mother did not preserve this claim before the juvenile court. At the permanency review hearing on July 26, 2016, the court explicitly informed Mother of the restrictions it was placing on her speech, stating as follows:

> THE COURT: … I'm going to issue a gag order against [M]other.
>
> [Mother], you're not to talk about this case to anyone. That means you're not to comment with any organization outside of this courtroom…. And [you're not to] threaten the workers, any of the workers. You're not to put any pictures on Facebook and you're not to allow anybody else to disparage the workers or put their pictures on Facebook or any other social media.
>
> You're not to threaten any judge. Put [on social media] pictures of any judges, of any court personal [*sic*]….

N.T. Hearing, 7/26/16, at 51-52. Mother at no point objected to the court's directives, or stated the constitutional concerns she presents herein. Mother also did not file a motion for reconsideration after the court set forth these restrictions on her speech in the written order issued after the hearing. Instead, it is clear that Mother is attempting to raise her argument that the court's order violates her First Amendment rights for the first time on appeal. Accordingly, that issue is waived for our review. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[1]

---

[1] Additionally, we also point out that Mother did not present the specific argument she asserts herein in either her *pro se* Rule 1925(b) statement, or the supplemental Rule 1925(b) statement filed by her attorney. In those documents, Mother simply asserted, without elaboration, that the court's order violated her First Amendment right to free speech. **See** Mother's *Pro*
*(Footnote Continued Next Page)*

Likewise, Mother's second issue is waived for the same reason.

Therein, Mother challenges the following portion of the July 26, 2016 order:

> Mother to continue supervised visits at the Agency…[.]  Mother [will] provide her cell phones and any recording devices to the Agency worker/security at the visits[.]  [S]ecurity is authorized to search Mother's bag, and after the visit, security is to return Mother's property to her[.]

Juvenile Court Order, 7/26/16, at 2 (unnecessary capitalization omitted).  In attacking this portion of the order, Mother seemingly takes issue only with the fact that the court permitted the search and seizure to be conducted by "private individuals," *i.e.* 'Agency' security personnel.[2]  Mother's Brief at 18. Mother complains that the security personnel may not "have … training" or "understanding of law and constitutional rights…."  **Id.**  Thus, Mother claims that the court's empowering these security guards to seize and search her property was "beyond the court's authority."  **Id.**

Again, Mother is asserting this argument for the first time on appeal. At the July 26, 2016 hearing, the court explained to Mother that the security

---

*(Footnote Continued)* _____

*Se* Rule 1925(b) Statement, 8/23/16, at 1; Supplemental Rule 1925(b) Statement, 9/1/16, at 1-2 (unnumbered).  Mother at no point identified her specific claim that the court's order was not narrowly tailored to the needs of this case.  As such, the juvenile court did not discuss this argument in its Rule 1925(a) opinion.  Consequently, we would deem Mother's first issue waived on this basis, as well.  **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

[2] We presume that the 'Agency' security personnel refers to DHS security guards.

guard at the Agency would be searching her bags prior to her visits with the Children, and the guard would be "keep[ing] the cellphone, [and] any recording devices[,] with him until [Mother] completes her visitation." N.T. Hearing at 48. While Mother lodged a timely objection to this portion of the court's order, that objection was as follows:

> [Mother's Counsel]: Your Honor, respectfully, on behalf of my client please note the objection for this reason. [Mother] uses her phone for [the Children] to play different games and to watch television with the phone.

*Id.* at 48-49. At no point did Mother object to the search and seizure component of the court's order on the basis that it infringed on her Fourth Amendment rights, generally, nor raise the more specific claim that the court lacked authority to empower the Agency security personnel to conduct those searches and seizures. Consequently, Mother cannot present this argument for the first time on appeal. *See* Pa.R.A.P. 302(a).[3]

Finally, Mother's third issue is merely a short reiteration of her first two claims, neither of which were preserved below. Consequently, her third issue is waived, as well. *See* Pa.R.A.P. 302(a).

---

[3] Additionally, Mother has waived the specific argument presented in her second issue by failing to raise it in her Rule 1925(b) statement. Therein, Mother stated that the court's order violated her Fourth Amendment rights; however, she did not allege, nor in any way suggest, her specific claim that the court lacked authority to empower the Agency security personnel to conduct the search and seizure. Thus, the juvenile court did not discuss this issue in its Rule 1925(a) opinion. Accordingly, Mother has waived her argument for this reason, as well. *See* Pa.R.A.P. 1925(b)(4)(vii).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/2017